MEAD, Appellant, v. FIRST NATIONAL BANK OF RAPID CITY, Respondent.

(249 N. W. 639.)

(File No. 7040. Opinion filed July 18, 1933.)

*H. F. Fellows* and *Williams & Sweet*, all of Rapid City, for Appellant.

*Denu & Philip*, of Rapid City, for Respondent.

POLLEY, J. The controversy involved on this appeal grows out of the purchase and sale of a drove of cattle. The case was tried to the court without a jury. Findings of fact, conclusions of law, and judgment were for defendant, and plaintiff appeals.

The facts and circumstances involved are as follows:

On or about the 6th day of April, 1927, one John Craven of Kadoka, S. D., acting as agent for the plaintiff, entered into an oral agreement with one Edwin Hopkins of Milesville, S. D., to buy 182 head of cattle belonging to the said Hopkins at the agreed price of of 7½ cents per pound. Hopkins was to move the cattle from Milesville to Kadoka where the same were to be weighed and delivered to the said purchaser. The cattle were to be moved immediately after the contract, but, because of inclement weather, they

did not reach Kadoka until on or about the 23d day of April. At the time of the making of this contract, the defendant (First National Bank of Rapid City) had a mortgage on said cattle for $5,182.44. About the 8th day of April, Hopkins notified defendant by letter that he was selling the said cattle, and that the amount of the purchase price would be between nine and ten thousand dollars, and that the money would have to be at Kadoka or at Rapid City with the defendant bank before delivery. Immediately upon the receipt of this letter, the defendant advised said Hopkins that the Dakota State Bank of Kadoka had been notified that the money in payment for the cattle was to come to the defendant in some form before the chattel mortgage could be released. A letter to this effect was sent to the Dakota State Bank at the same time. On the 23d day of April, plaintiff wired defendant advising it that Hopkins was demanding currency and requesting the defendant bank to immediately wire to said Hopkins at Kadoka that it wished the deal handled through the Kadoka bank, and stating that he (plaintiff) would give the Kadoka bank a Chicago draft for the cattle. On the 24th day of April, plaintiff telephoned to A. S. Halley, president of the defendant bank, that Hopkins still demanded currency for the cattle and asking said Halley if some arrangement could not be made other than the delivery of currency. To this Halley replied that a deposit could be made to the credit of Hopkins in some Chicago bank, and suggested that such deposit be made at the Continental & Commercial National Bank of Chicago. The plaintiff had money on deposit at the Stock Yards National Bank of Chicago, and on April 25th defendant received a telegram from said bank reading as follows: "We deposit with Continental and Commercial National Bank, Chicago, Illinois, Nine thousand dollars deposited by Northwestern Live Stock Commission Company for payment to E. Hopkins."

A letter confirming this wire was sent to defendant on the same day, and on the same day defendant received from the Continental & Commercial National Bank of Chicago a telegram reading as follows: "We credit your account nine thousand dollars deposited by Stock Yards National Bank, Chicago, Ill."

Upon receipt of these messages, and on the 25th day of April, 1927, defendant notified the said Hopkins by telephone that the sum of $9,000 had been credited to his account in defendant's bank.

To this information Hopkins replied that he was ill at the time, but would be in Rapid City in a few days. On the 27th day of April 1927, plaintiff, through his agents, proceeded to weigh and ship the cattle. They weighed only 97,690 pounds. This number of pounds, at 7½ cents per pound, amounted to only $7,326.75. This amount, taken from the sum of $9,000, left a balance of $1,673.25. On the 28th day of April, 1927, plaintiff's son, Everett Mead, acting as plaintiff's agent, went in person to Rapid City and called on the defendant. He exhibited the weights of said cattle to the cashier of defendant's bank and informed said cashier that at the agreed price said cattle came to only $7,326.75, and that there was a balance of $1,673.25 after subtracting the value of the cattle from $9,000, belonging to plaintiff, which amount said Mead demanded be paid to him. This demand was refused, and upon such refusal said Mead notified said cashier that he would start suit for the recovery of the same. On the following day, Hopkins, himself, came to defendant's bank, and demanded that the entire sum of $9,000 be paid over to him. Whereupon the bank deducted the amount of its mortgage $5,182.44 from the $9,000, and paid all of the balance amounting to $3,817.56 to Hopkins.

The trial court made finding of fact No. VII as follows: "That defendant never agreed at any time to refund any part of said money to the plaintiff or his agents; that it never undertook at any time to arbitrate or adjust any dispute between the said Hopkins and the plaintiff, or to determine the amount due for said cattle; that it never participated in any manner in the negotiations for the sale of said cattle; that defendant had assured said Hopkins that the $9,000.00 was deposited to his credit before it had any notice of a claim for refund by plaintiff; that it paid the money to the said Hopkins as it was directed to do by the Stock Yards National Bank of Chicago, Illinois, which had deposited said money in the Continental and Commercial National Bank as aforesaid."

This finding is not supported by any evidence in the record. It is true that, when the bank accepted this $9,000, it did not expressly agree to refund any of the money to plaintiff, but it knew beyond question that this money was sent on to it from Chicago to pay Hopkins for his cattle, and it knew also that Hopkins was not to receive anything above the agreed purchase price of the cattle. It knew when it accepted this money that it was to be

disbursed to the parties entitled thereto. These parties were the defendant, itself, to the extent of the amount of its mortgage on the cattle, which was $5,182.44; that the plaintiff was entitled to the difference between the purchase price of the cattle, $7,326.25 and $9,000, or a balance amounting to $1,673.25, and that the balance of $2,144.31 belonged to Hopkins.

Defendant attempts to justify its disposition of this fund upon the ground, first, that on receipt of the $9,000 it immediately notified Hopkins that that amount of money had been deposited with the defendant to Hopkins' credit before it had any notice of a claim for refund by the plaintiff; and, second, that it was authorized to pay all of this money to Hopkins by the telegram and letter received from the Stock Yards National Bank of Chicago on the 25th day of April. This is no justification at all. In the first place, the said sum of $9,000 was never deposited in defendant's bank to the credit of Hopkins. It issued a cashier's check for that amount "payable to ourselves," and an entry was made on the books of the bank to the effect that the money was deposited "to the credit of ourselves." But this is not material to the rights of plaintiff, for the bank had actual knowledge before it parted with the money that only so much of the $9,000 was to go to Hopkins as was sufficient to pay for his cattle at the agreed price. The bank had actual knowledge of all these facts before it parted with any of the money, and, with this knowledge, it did do exactly what the trial court found it never undertook to do, to wit, to arbitrate and adjust the difference between plaintiff and Hopkins in regard to the disposition of this money. If the bank had entertained any doubt that the situation was exactly as plaintiff's son claimed it to be on the 28th of April, it could have retained this money in its hands until the differences between Mead and Hopkins had been adjudicated. Upon the record in this case, plaintiff is entitled to judgment for $1,673.25, with interest and costs.

The judgment and order appealed from are reversed, and the cause remanded to the trial court, with directions to take further proceedings in conformity with this opinion.

ROBERTS and WARREN, JJ., concur.

RUDOLPH, P. J., and CAMPBELL, J. (dissenting). We do not concur in the result reached in the majority opinion. We

are unable to determine from the record that the defendant owed any duty or obligation of any kind to the plaintiff. The defendant was not, in our opinion, the agent of the plaintiff in transmitting this money to Hopkins. At the inception of this transaction, Hopkins demanded currency before he would deliver the cattle to the plaintiff. There then arose a dispute between Hopkins and the plaintiff over the sale of these cattle, and Hopkins left the plaintiff and the cattle at Kadoka, and stated that the deal was off. Thereafter the plaintiff got possession of the cattle, just how does not appear, but in order to get these cattle it was necessary that the plaintiff pay Hopkins in advance. This he did by having sent to the first National Bank the $9,000 through the Chicago banks. The defendant bank in this transaction was not acting as agent for plaintiff in any way, but was simply acting as agent for Hopkins in receiving this money. Payment to the bank was in effect payment to Hopkins, and the bank had no obligation to any one except Hopkins.